UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

HAI V. LE,                                      )
                                                )
        *Plaintiff*,                            )        No. 1:17-cv-00145-TRM-SKL
                                                )
v.                                              )
                                                )
COMMISSIONER OF SOCIAL SECURITY,                )
                                                )
        *Defendant*.                            )

## REPORT AND RECOMMENDATION

Plaintiff Hai V. Le ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying him disability insurance benefits ("DIB") and supplemental security income

("SSI"). Each party moved for summary judgment [Docs. 10 & 13] with supporting briefs [Docs.

11 & 14]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1)

Plaintiff's motion for summary judgment be **DENIED**; (2) the Commissioner's motion for

summary judgment be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

As reflected in the transcript of the administrative proceedings [Doc. 7 ("Tr.")], Plaintiff

filed an application for DIB and SSI in November 2013, alleging disability beginning August 24,

2013 (Tr. 16; 185). After Plaintiff's claims were denied initially and upon reconsideration, a

hearing on Plaintiff's claims was held before an administrative law judge ("ALJ") during which

Plaintiff was represented by counsel. On March 1, 2016, the ALJ issued an unfavorable decision

finding that Plaintiff was not under a "disability" as defined in the Social Security Act (the "Act").

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born on January 1, 1962, making him "an individual closely approaching advanced age" on the alleged disability onset date (Tr. 28). He worked for over 15 years as a machine operator/weaver at a carpet manufacturing business (Tr. 228, 237). He was born in Vietnam and was educated there through at least 7th grade, possibly 10th grade (Tr. 44, 237).

### B.     Medical Records

Plaintiff alleges disability due to degenerative disc disease of the thoracic and lumbar spine, knee and shoulder osteoarthritis bilaterally, gout, hypertension, sleep apnea, multinodular goiter, depression and generalized anxiety disorder (Tr. 287). The ALJ provides a detailed, factual recitation of Plaintiff's medical record (Tr. 21-27), which Defendant adopts [Doc. 14 at Page ID # 571]. Plaintiff also discusses the relevant portions of his medical record throughout his brief [Doc. 11], as does Defendant [Doc. 14]. The relevant records have been reviewed and will be discussed only as necessary below.

### C.     Hearing Testimony

At the hearing before the ALJ, Plaintiff testified with the assistance of an interpreter (Tr. 35-45). A vocational expert ("VE") also testified (Tr. 45-50). The transcript of the testimony at the hearing has been carefully reviewed.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements through December 31, 2018 (Tr. 18). At step one of the process, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date, August 24, 2013 (Tr. 18). At step two, the ALJ found Plaintiff had medically determinable impairments of arthritis of the knee and shoulder, degenerative disc disease of the thoracic and lumbar spine, anxiety, and depression (Tr. 18). The ALJ found that Plaintiff's hypertension was not a severe impairment as it was "stable on medications." (Tr. 19). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).

Next the ALJ found Plaintiff had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. He should avoid all exposure to hazards. Further, the claimant is limited to simple and routine tasks, no contact with the public, and infrequent workplace changes.

(Tr. 20). At step four, the ALJ found Plaintiff was unable to perform any past relevant work (Tr. 28). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy (Tr. 28). These findings led to the ALJ's

4

determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision (Tr. 29).

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed and remanded under sentence four for an award of benefits or for further consideration of his claim. His general position is that the ALJ erred in finding he was capable of anything more than sedentary work, and in finding that he was able to communicate in English. Either an RFC limited to sedentary work or a finding of illiteracy would, Plaintiff contends, compel a finding of disability under the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2; the "Grids"). Plaintiff asserts five specific errors: (1) "The ALJ erred in incorrectly concluding that Mr. Le was working beyond his alleged onset date (AOD) and used this conclusion to attack his credibility." (2) "The ALJ erred in concluding that Claimant's language skills do not constitute an impediment to unskilled work." (3) "The ALJ erred in concluding that the Function Report and Third Party Function Report are not consistent with disability." (4) "The ALJ erred when she gave a medical opinion about MRI results and found that there is nothing in the record to contradict a light residual functional capacity assessment." (5) "The Vocational Expert's testimony is not entirely consistent with the DOT and the ALJ relied upon this erroneous testimony. The ALJ's hypothetical RFC failed to incorporate language barriers." [Doc. 11 at Page ID # 545].

The first and the third issues both relate to the ALJ's consideration of Plaintiff's credibility and I will consider them together, first. Next I will address Plaintiff's arguments concerning the MRI and his ability (or lack thereof) to perform light work, followed by Plaintiff's argument that the VE's testimony was inconsistent with the DOT (which Plaintiff includes in his fifth issue).

Last, I will consider the second and fifth issues, which both concern the ALJ's finding that Plaintiff was able to communicate in English.

### A.    Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported

6

other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.     The ALJ's Assessment of Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the

7

individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2.[1] "It is not sufficient to make a conclusory statement 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* The ALJ need not, however, address every factor listed in SSR 96-7p when making a credibility determination. *O'Mary v. Colvin*, No. 3:13-CV-458-TAV-CCS, 2014 WL 4348183, at *12 (E.D. Tenn., Sept. 2, 2014) (citation omitted).

Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence); *see also Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (citation omitted) (concluding the ALJ

---

[1] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect on March 28, 2016, approximately one month after the ALJ issued her decision on March 1, 2016. SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter, so it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, this report will occasionally refer to the ALJ's analysis using the same term.

was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (citation omitted) (stating the ALJ's credibility assessment is entitled to "substantial deference"). Substantial deference has been held to suggest that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Walters*, 127 F.3d at 531.

The ALJ discussed findings relevant to Plaintiff's credibility at several points in her decision:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> . . . .
>
> MRI of the thoracic spine, dated August 27, 2013, revealed degenerative disc at T11-12 and spondylosis. There were no other abnormalities. MRI of the lumbar spine on the same date revealed grade I spondylolisthesis L5 on S1 and degenerative disc at L5-S1 (Exhibit 2F). I have considered these objective images. The claimant has not undergone spinal surgery, despite his complaints.
>
> . . . He continued treatment for his complaints on October 10, 2013. He stated his sleep cycle was fair. The claimant indicated his medications were working fair and he was compliant. He denied side effects from medications. He indicated his activities of daily living were fair, which included driving, walking, grocery shopping, cooking, cleaning, and bathing. Treatment notes indicated the claimant was working full time. On said date, the claimant tested positive for meth. The physician mailed the claimant a letter subsequently, on October 17, 2013, and indicated he would no longer be able to treat the claimant at the facility because he tested

positive for an illegal substance. Treatment notes indicated this was a clear breach of his medication agreement he signed with the facility. . . . While I note the claimant's positive straight leg raise and decreased range of motion on musculoskeletal exam, the claimant was working full time in October 2013. I take note this is not consistent with his allegations of disability. The claimant indicated his medications were somewhat effective for pain, and he denied medication side effects. . . . The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Also, the claimant was released by the medical practice because he tested positive for meth. This clearly does not enhance his credibility and reflects non-compliance with his medication agreement.

(Tr. 21-22). The ALJ also noted Plaintiff "has only undergone conservative treatment for his musculoskeletal complaints and surgery has not been recommended." (Tr. 23). Regarding Plaintiff's alleged mental health conditions, the ALJ also found Plaintiff "not fully credible," noting that he receives "no mental health treatment or medications." (Tr. 27). Finally, the ALJ discussed Plaintiff's Function Report and the Third Party Function Report from Plaintiff's brother-in-law:

The claimant completed a Function Report Adult form. He indicated he had no problems with personal care. Also, he alleged he could prepare meals, do some cleaning, and laundry. He stated he could drive a car, shop in stores and by computer, pay bills, count change, handle a savings account, and use a checkbook/money orders (Exhibit 7E). The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

A Third Party Function Report, from Hie[p] T[h]ach, the claimant's brother in law, dated November 25, 2013, indicated he helped the claimant clean and do yardwork once a week. He indicated the claimant had no problems with personal care needs. He noted the claimant prepared his own meals and did some household chores, including cleaning, laundry and doing dishes. He documented the claimant could drive a car, shop in stores and by computer. Mr. T[h]ach indicated the claimant had no problems following written instructions (Exhibit 2E). I have given some weight to the 3rd party report. I note the brother [in] law is not an acceptable medical source but he is familiar with the claimant and

> interacts with him on a regular basis. The report is not consistent
> with disability and in fact reveals the claimant performs multiple
> activities of daily living.

(Tr. 27).

Plaintiff argues the ALJ's credibility analysis requires remand because the ALJ erred in finding Plaintiff worked after the alleged onset date, and in finding the two function reports are inconsistent with disability [Doc. 11 at Page ID # 547-48; 550-51].

As Defendant points out, the ALJ did not entirely discount Plaintiff's subjective complaints or fail to incorporate any restrictions due to Plaintiff's subjective complaints [Doc. 14 at Page ID # 577]. The ALJ specifically took note that "the claimant's musculoskeletal complaints" indicated "that the claimant had some difficulty moving from standing to sitting position," and the ALJ specifically accommodated that limitation in the RFC by finding that Plaintiff "should never climb ladders, ropes or scaffolds and should avoid all exposure to hazards." (Tr. 21). Although Plaintiff never sought or received any mental health care, the ALJ limited him to "simple and routine tasks, no contact with the public and infrequent work place changes" based on his anxiety and depression (Tr. 26). And the ALJ limited Plaintiff to light work based on his back and shoulder complaints (Tr. 26-27).

Moreover, as shown in the quotations from the ALJ's decision above, the ALJ cited objective medical evidence that was not consistent with Plaintiff's complaints. She also cited a number of reasons for discounting Plaintiff's credibility in addition to the reasons Plaintiff takes issue with on appeal. The ALJ cited the fact that Plaintiff has received only conservative treatment, the fact that Plaintiff was removed from a medical practice for using an illegal drug, and the fact that Plaintiff's condition improved with medication (Tr. 21-22). Plaintiff does not challenge the ALJ's reliance on these factors, and I **FIND** they are adequately supported in the record. These

11

are also generally accepted reasons for discounting a claimant's credibility. *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 727 (6th Cir. 2013) ("The ALJ's finding is supported by the evidence in the record that his treatment was minimal and conservative during the period at question . . . ."); *see also* SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed . . . .").

These factors alone provide adequate support for the ALJ's decision to partially discount Plaintiff's credibility. *See Ulman*, 693 F.3d at 714 (Finding harmless error concerning one aspect of ALJ's credibility analysis where there were other reasons supporting the ALJ's credibility analysis: "the Commissioner is simply saying that the ALJ cited 'substantial evidence' to support his conclusion regarding claimant's credibility even if we discount his reliance upon the fall from the ladder."). I will nevertheless address the errors Plaintiff alleges.

First, Plaintiff claims the ALJ erred in finding Plaintiff worked full-time after his alleged disability onset date of August 24, 2013. The ALJ's conclusion is clearly based on a note written by Nurse Practitioner Barbara Conyers from the Center for Spine & Pain Medicine on October 10, 2013, which states, "[t]he patient is currently working full-time." (Tr. 350). That same day, NP Conyers completed a "return to work authorization" which states Plaintiff was released to work with restrictions as of a date "unknown." (Tr. 358). These pages in the transcript provide support for the ALJ's conclusion that Plaintiff worked after his alleged onset date. Plaintiff cites two other records from the Center for Spine & Pain Medicine: one from September 16, 2013, which states that as of that date Plaintiff had "[m]oderate limitation of functional capacity" and could not lift more than 10 pounds (Tr. 361); and one from October 4, 2013, which states that Plaintiff stopped

working one to two months earlier (Tr. 359). Neither of these records rule out the possibility that Plaintiff returned to work as of October 10, 2013, and the ALJ clearly considered at least the October 4 record, because she discusses it at length in her decision (Tr. 23).

Plaintiff further argues that he was drawing short-term disability in October 2013, and was therefore *employed* but not actually working, which he contends caused NP Conyers's confusion over whether he was working full time on October 10, 2013 [Doc. 11 at Page ID # 548]. Plaintiff's explanation is perhaps plausible; however, the ALJ's interpretation of the evidence is reasonable and supported by specific proof in the record, and under the court's standard of review, the ALJ's interpretation "must be upheld, despite conflicting evidence." *Rudd*, 531 F. App'x at 727 (citing *Ulman*, 693 F.3d at 713-14).

Next, Plaintiff argues the ALJ erred in concluding that his Function Report and the Third Party Function Report completed by Plaintiff's brother-in-law were not consistent with disability. Plaintiff argues the "ALJ's conclusion seems to be yet another attempt to attack Mr. Le's credibility and to avoid full consideration of his condition and allegations." [Doc. 11 at Page ID # 551]. I respectfully disagree.

Plaintiff and his brother-in-law did indeed describe fairly extensive daily activities, as the ALJ found. At the time he filled out the form, Plaintiff was caring for himself and at least three children, including cooking for everyone, bringing the children back and forth to school, and helping the children with their homework (Tr. 220-21, 250-51). The children left his home and began living with their mother in March 2015 (over a year after his alleged onset date) only because Plaintiff had no income, not because he was unable to take care of them physically or mentally (Tr. 41). He also cared for a dog without help (Tr. 221, 251). He describes waking up at 6 a.m. and going to bed at 10 p.m., and performs chores about four hours a day (Tr. 250, 252). Plaintiff

13

is correct that he is not required to be an invalid to qualify for disability, but it is reasonable to conclude this level of activity requires a fairly high degree of standing and mobility of both upper and lower extremities.

Even if the ALJ erred in finding Plaintiff worked after his alleged onset date and that the function reports were not consistent with disability, the ALJ set forth several other legitimate reasons for discounting Plaintiff's credibility, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Accordingly, I **FIND** the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight she assigned to Plaintiff's statements and the reasons for that weight. I **FIND** the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence, and should not be disturbed. I **RECOMMEND** Plaintiff's motion be denied in this regard.

### C. Plaintiff's Physical RFC and the ALJ's Assessment of the May 2014 MRI

Next, Plaintiff argues that the ALJ "erred when she gave a medical opinion about MRI results and found that there is nothing in the record to contradict a light residual functional capacity assessment." [Doc. 11 at Page ID # 551]. Plaintiff argues the state agency doctors did not have this MRI available to them when they rendered their opinions on reconsideration,[2] and points out that no consultative exam was performed after the MRI, such that there is no medical opinion in the record concerning how the findings from this MRI impact Plaintiff's ability to do light work [*id.* at 551-52]. Plaintiff then goes on to list evidence he seemingly believes contradicts the ALJ's finding that he was capable of light work.

---

[2] I note the state agency doctors issued their reconsideration decisions on July 1, 2014, almost two months after the MRI was performed (Tr. 94). In addition, the state agency doctors received evidence on May 7, 2014, although it is not clear whether that evidence is the MRI (Tr. 86).

14

Regarding the MRI (the primary basis for Plaintiff's objection to the ALJ's formulation of his physical RFC), the ALJ wrote:

> MRI of the lumbar spine, dated May 6, 2014, revealed at L5-S1, there was grade I anterior spondylolisthesis, posterior annular bulging and facet arth[r]opathy with minimal foraminal narrowing, right greater than left. At the L4-5, there was minimal broad based posterior disc protrusion with no associated spinal canal or foraminal narrowing. At L2-3, there was posterolateral disc protrusion on the left side with "minimal" left foraminal narrowing (Exhibit 9F). While I have accommodated the claimant's lumbar spine complaints in the residual functional capacity assessment, the objective evidence revealed only minimal foraminal narrowing. There is nothing in the record, which contradicts the light residual functional capacity assessment with the additional physical limitations.

(Tr. 25-26).

Defendant argues that the ALJ did not impermissibly give a medical opinion, because she simply provided a "word-for-word restatement of the MRI scan that had already been interpreted by a radiologist," citing *Rudd*, 531 F. App'x at 727 [Doc. 14 at Page ID # 574]. Defendant has the better argument, as *Rudd* clearly states that when an ALJ describes an x-ray consistently with the description provided by the administering radiologist, the ALJ does not exceed her expertise:

> In other words, the ALJ was not required to obtain a medical expert to interpret the evidence related to Rudd's impairments. Furthermore, the ALJ did not interpret raw medical data beyond her ability. The x-rays of Rudd's hands and lumbar spine, which were the only raw medical data, had already been read and interpreted by a radiologist. The ALJ's conclusions regarding Rudd's lumbar spine and hands were consistent with the technician's interpretation of the x-rays. Thus, the ALJ properly evaluated the evidence of Rudd's physical condition without the assistance of a medical expert.

*Id.* (footnote omitted).

Here, as Defendant points out, the ALJ simply restated the radiologist's findings, of "minimal" narrowing (*see* Tr. 467). Plaintiff fails to explain how such minimal findings are

15

inconsistent with the ALJ's determination that Plaintiff is capable of light work, and I **FIND** the ALJ properly weighed this medical evidence when determining Plaintiff was capable of light work. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); *see also Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 553 (6th Cir. 2016) (The "diagnostic evidence—which reveals mostly mild-to-moderate findings and no significant degeneration—offers support to the ALJ's RFC determination" that the claimant was capable of light work.).

Plaintiff likewise fails to explain how the other evidence he cites is inconsistent with the ALJ's finding that he is capable of light work. He simply highlights certain treatments/notes from his medical record, most—if not all of which—are unremarkable [Doc. 11 at Page ID # 552-53]. It appears the ALJ considered this evidence, and Plaintiff does not explain how or why the ALJ's consideration of the evidence was incorrect or in error. For example, Plaintiff cites his treatment at Tennessee Valley Pain Management [*id.* at Page ID # 552]. He discusses how Dr. Stephen Dreskin (based partially on Plaintiff's subjective reports) diagnosed osteoarthritis, spinal stenosis, thoracic spondylosis, and lumbar spondylosis, and prescribed Hydrocodone and Neurontin [*id.*]. The ALJ discussed these same records, but also stated that the prescribed medications "were helping [Plaintiff's] symptoms," a fact which Plaintiff fails to acknowledge or discuss. The ALJ's finding is borne out in the record (*see, e.g.*, Tr. 471, "Patient reports his pain is alleviated by medications . . . .").

In sum, I **FIND** the ALJ's formulation of a fairly limited, light work RFC is supported by substantial evidence in the record, and her consideration and discussion of the May 2014 MRI is appropriate. I therefore **RECOMMEND** that Plaintiff's motion be denied in this regard.

### D. Dictionary of Occupational Titles ("DOT")

Next, Plaintiff argues that the VE's "testimony is not entirely consistent with the DOT" [Doc. 11 at Page ID # 553]. First, Plaintiff argues the VE misidentified Plaintiff's past work as being a "textile machine operator, medium, semi-skilled, SVP3, DOT 585.685-702" [Doc. 11 at Page ID # 553 (citing VE's testimony at Tr. 45-46)]. Plaintiff contends there is no DOT listing that corresponds to that number or title. Defendant points out there *is* a DOT listing for 585.685-102, for "Shearing-Machine Operator (carpet & rug; textile)" which cross-references to "textile machine operator" [Doc. 14 at Page ID # 588; *see also* DOT listing, *available at* https://occupationalinfo.org/58/585685102.html]. Thus, the reference to -702 rather than -102 appears to be a transcription mistake, as Defendant contends. Plaintiff nevertheless argues his past work should have been classified as a "Creeler," DOT 689.687-030, which is SVP2, *unskilled* work. Plaintiff appears to advance this argument as part of a larger argument that he qualifies as disabled under the Grids. However, as Plaintiff himself acknowledges, he would still have to qualify as illiterate to be found disabled under the Grids at the light work level even if the VE had identified Plaintiff's past work as unskilled [*see* Doc. 11 at Page ID # 553-54; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, Grid 202.09 & 202.10, *available at* https://www.ssa.gov/OP_Home/cfr20/404/404-app-p02.htm]. The relevant concern is, therefore, whether the ALJ's decisions that Plaintiff is capable of performing light work (addressed above) and that Plaintiff is capable of communicating in English, i.e., not illiterate (addressed below) are supported by substantial evidence. Accordingly, to the extent Plaintiff is arguing this case should be remanded because the VE misstated the DOT number for Plaintiff's past relevant work, Plaintiff's motion should be denied.

Plaintiff also takes issue with the "assembler auto, light, unskilled SVP2, DOT 706.684-022" occupation identified by the VE as available to someone with Plaintiff's RFC [Doc. 11 at Page ID # 554 (citing Tr. 46-47)]. Plaintiff argues there "is no occupation in the DOT with that title," and that the DOT number cited "corresponds with 'assembler, small products I' which is a light, SVP 2 occupation." [*id.* at Page ID # 554]. Plaintiff seems to take the position that the ALJ erred by relying on this testimony without asking the VE to explain this alleged conflict between the DOT and the VE's testimony. As Defendant points out, however, the fact that the VE and the DOT "may use different terminology to describe employment positions does not establish that a conflict exists between these sources of evidence." [Doc. 14 at Page ID 588 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (citation omitted))]. This is because the DOT lists *occupations*, each of which is a "collective description" of a number of jobs. *See* SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). "Each occupation represents numerous jobs." *Id.* The "assembler, small products I" occupation covers assembly of parts in "any industry" and specifically lists as examples assembly jobs for "ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors." *See* DOT Listing 706.684-022, assembler, small products I, *available at* https://occupationalinfo.org/70/706684022.html. It therefore includes jobs that require the assembly of small automotive parts. Accordingly, I **FIND** there is no conflict or inconsistency regarding the VE's identification of the "assembler auto" occupation at the administrative hearing and the "assembler, small products I" listed in the DOT. Plaintiff's motion should be denied in this regard.

### E. The ALJ's Finding that Plaintiff Can Communicate in English

Plaintiff also argues that the "ALJ erred in concluding that [Plaintiff's] language skills do not constitute an impediment to unskilled work," and that the ALJ's "hypothetical RFC failed to incorporate language barriers," such that the VE's testimony in response to the hypothetical does not constitute substantial evidence Plaintiff can perform other work [Doc. 11 at Page ID # 545]. Had the ALJ found Plaintiff to be illiterate or unable to communicate in English, the Grids would have directed a finding of disabled (at the light exertional level).

Plaintiff further contends that two of the three occupations identified by the VE as available to someone with Plaintiff's RFC—the mail clerk occupation (DOT 209.687-026) and the warehouse checker occupation (DOT 222.657-010)—exceed Plaintiff's language abilities [Doc. 11 at Page ID # 554-55]. Plaintiff points out the administrative hearing was completed with a Vietnamese interpreter (Tr. 35-51), and that the Field Office Disability Report completed by an SSA official states: Plaintiff "required a Vietnamese interpreter so that we could take his application as he speaks very limited English. His Brother in law had to help too but his English was not much better." (Tr. 218-19). One of Plaintiff's providers at Memorial Health Care System also noted a "huge language barrier" in June 2014 (Tr. 435).

Defendant argues the ALJ's finding that Plaintiff had a limited education but was able to communicate in English is supported by substantial evidence in the record, and furthermore that the RFC, which requires unskilled work with simple and routine tasks, no contact with the public, and infrequent workplace changes[3], adequately accommodates Plaintiff's alleged language barrier [Doc. 14 at Page ID # 584-89].

---

[3] It is worth acknowledging the ALJ limited Plaintiff to simple and routine tasks, no contact with the public and infrequent workplace changes specifically "[b]ased on his anxiety and depression." (Tr. 26).

The ALJ found:

> [I]n addressing the claimant's ability to communicate in English, while the record reflects some limitations, he was able to communicate with the consultative examiner without an interpreter and appeared to have sufficient English skills for unskilled work. He also appeared to have completed his Function Report (Exhibit 7E) without assistance. His work history provides [an] additional indication that he can communicate sufficiently in English to perform unskilled work. He had past work as a textile machine operator.

(Tr. 27-28).

Plaintiff first challenges the ALJ's finding that Plaintiff "appeared to have completed his Function Report . . . without assistance." [Doc. 11 at Page ID # 549]. Plaintiff argues the handwriting on Plaintiff's Adult Function Report is the same as the handwriting on the Third Party Function Report and the Third Party Drug and Alcohol Use Questionnaire, both of which were completed by Plaintiff's brother-in-law, Mr. Hiep Thach, who also sometimes attended doctor's appointments with Plaintiff to help with translating [*id.*; *see also* Tr. 435].

The handwriting does appear to be similar across the three reports, which supports Plaintiff's contention that Mr. Thach completed the Adult Function Report for Plaintiff (Tr. 220-27; 250-57; 278-79). Nevertheless, the Adult Function Report is written in a first-person voice, and more importantly, there is a specific section for the "Name of person completing this form" (rather than the name of the person who claims to be disabled) and that section states that "Hai . . . Le" completed the form (Tr. 257). Thus, there is at least some support in the record for the ALJ's finding that Plaintiff "appeared to have completed his Function Report (Exhibit 7E) without assistance." (Tr. 28). However, even if the ALJ did err in concluding that Plaintiff completed the form himself, as discussed below, the record contains other substantial evidence supporting the ALJ's conclusion that Plaintiff was able to communicate in English.

20

Plaintiff next takes issue with the ALJ's statement that Plaintiff's "work history provides [an] additional indication that he can communicate sufficiently in English to perform unskilled work." (Tr. 28). Plaintiff argues:

> To the contrary, we would argue that the fact that he has worked for only one employer, doing only one job, in a single industry, for the past 15 years does *not* provide any basis upon which to assume that Mr. Le could successfully complete a job application today (most of which are now computerized), be understood by a complete stranger well enough to conduct a job interview, to successfully complete job training, or to communicate appropriately with co-workers or supervisors in any of the other occupations identified by the vocational expert.

[Doc. 11 at Page ID # 549-50].

Plaintiff's interpretation is reasonable, but so is the ALJ's. There is no indication that Plaintiff did not have to learn new tasks and skills or meet new people even as he stayed at the same job for a number of years. And, as Defendant points out, the ALJ limited Plaintiff to unskilled work, which by definition does not require extensive or difficult training:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

20 C.F.R. § 404.1568.[4]

Moreover, the ALJ's finding that Plaintiff has the ability to communicate in English is supported by substantial evidence in the form of the report from the psychological consultative examiner, Dee Langford, Ed.D. The ALJ afforded Dr. Langford's report "significant weight." (Tr. 24). The ALJ noted Dr. Langford observed Plaintiff was able to "follow spoken but not written

---

[4] As Defendant also points out, 20 C.F.R. § 404.1566(c) also provides that a person who is otherwise not disabled will not be found disabled if they remain unemployed due to an "inability to get work," "[t]he hiring practices of employers," or "[t]echnological changes in the industry," or because a person "would not actually be hired to do work [the person] could otherwise do."

instructions in English unless simple," and that Plaintiff's responses to her questions were "coherent and easy to understand" (Tr. 24; 366-67). While he was unable to spell the word "world" and he spoke with a "distinct accent," he was able to name four recent U.S. Presidents, and he showed "good use of basic vocabulary." (Tr. 24, 366). Plaintiff's nephew attended the consultative exam with Plaintiff, but was only present during the interview "at the very beginning." (Tr. 364). Plaintiff does not address the significance of Dr. Langford's report in his brief, nor does he challenge the weight the ALJ assigned to Dr. Langford's report. The ALJ also gave "some weight" to the report of the state agency mental health consultant, Robert Paul, Ph.D., who found based on his review of Plaintiff's records that Plaintiff was able to "understand, remember and carry out simple instructions but would have greater difficulty with more detailed and more complex instructions." (Tr. 26; 112-13). Plaintiff also does not challenge the weight assigned to Dr. Paul's findings.

For these reasons, I **FIND** the ALJ's determination that Plaintiff is able to communicate in English is supported by substantial evidence in the record, particularly Dr. Langford's report. As such, I **FIND** the ALJ's assessment of Plaintiff's RFC (a limited range of unskilled light work) is likewise supported by substantial evidence in the record. Plaintiff's motion should be denied in this regard.

Finally, and on a related note, Plaintiff briefly argues the ALJ erred by not acknowledging the VE's testimony that the labor market base would be eroded by 90% if an individual needed an interpreter to communicate in English [Doc. 11 at Page ID # 550 (citing Tr. 49)]. He further argues that two of the three occupations identified by the VE (the mail clerk and the "checker I (clerical)" position) exceed his language skills [*id.* at Page ID # 554-55]. As explained above, I have concluded the ALJ's determination concerning Plaintiff's language skills is supported by

substantial evidence in the record, and the VE's testimony does not conflict with the DOT. Whether Plaintiff personally believes the language skills required for the jobs exceed his own skills is not determinative; and Plaintiff does not even argue that the "assembler" occupation requires any special language abilities. Moreover, it is well-settled that, while an ALJ may rely on a VE's response to a hypothetical question only if the question accurately portrays the claimant's impairments, the "ALJ is required to incorporate only those limitations that he or she accepted as credible." *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389-90 (6th Cir. 2015) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ clearly did not credit Plaintiff's claim that he required an interpreter to perform unskilled work; accordingly, the ALJ did not err by declining to incorporate that limitation when crafting the hypothetical question to the VE. Plaintiff's motion should be denied in this regard.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **FIND** the ALJ's assessments of Plaintiff's credibility and his mental and physical RFC are supported by substantial evidence in the record. Plaintiff cites notations in the record and interpretations of evidence that support his position, but he does not cite to any significant mistakes or errors in the ALJ's reasoning, and the ALJ's findings are to be afforded deference. Accordingly, I **RECOMMEND**[5] that:

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

1) Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 13] be **GRANTED**; and

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/*Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE